FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 30 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

THEODORE A. FOLKES,

                Petitioner,

        - against -

WILLIAM A. LEE,

                Respondent.

----------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

10 Civ. 5416 (BMC)

**COGAN, District Judge.**

Petitioner was convicted by a jury of second degree, depraved indifference murder under New York Penal Law §125.25[2] after he fatally stabbed his girlfriend. The jury rejected his defense that the stabbing was an accident. He then pled guilty to cocaine possession, and was sentenced concurrently on both charges to twenty-five years to life. He raises four points of error with regard to his murder conviction in this petition for a writ of habeas corpus under 28 U.S.C. § 2254:

> (1) the evidence against him was legally insufficient;
>
> (2) the prosecutor improperly used petitioner's invocation of his Fifth Amendment right to remain silent as evidence of his guilt;
>
> (3) his trial counsel was ineffective for not preserving points (1) and (2) and, with regard to point the second point, for not explaining to the jury that petitioner had the right under <u>Miranda</u> to remain silent; and
>
> (4) his appellate counsel was ineffective for (a) not raising his trial counsel's ineffectiveness as noted above; and (b) not asserting that his girlfriend's inculpatory statements as she lay dying and other hearsay statements, received in evidence in violation of his right to confrontation, should not have been admitted.

As discussed below, these four points distill into three as a result of procedurally barred and unexhausted claims. Familiarity with the facts is assumed, but some additional facts will be set forth as relevant as to each of the points of error that petitioner has raised. None of the points have merit and the petition is therefore denied.

**I.     Insufficiency of the Evidence**

Petitioner is one of many New York defendants who were both convicted under the interpretation of N.Y. Pen. Law §125.25(2) (depraved indifference murder) set forth in People v. Register, 60 N.Y.2d 270, 274, 469 N.Y.S.2d 599 (1983), and had their appeal pending when the New York Court of Appeals decided People v. Feingold, 7 N.Y.3d 288, 294, 819 N.Y.S.2d 691 (2006), which overruled Register. In essence, Feingold held, contrary to Register, that in a one-on-one attack with a deadly weapon intentionally directed at a particular person who then dies as a result of the attack, depraved indifference murder will not lie; the proper charge is either intentional murder (N.Y. Penal Law §125.25(1)) or intentional manslaughter (manslaughter in the first degree, N.Y. Penal Law § 125.20(1)).

Too many decisions have discussed this evolutionary change in New York law and its impact on pending direct appeals and collateral challenges to depraved indifference murder convictions to require reiteration of that discussion here. See, e.g., Sanchez v. Lee, No. 10 Civ. 7719, 2011 WL 924859 (S.D.N.Y. Mar. 16, 2011). But to summarize, the state of the law as currently settled distills into the following principle: Although the New York Court of Appeals has held that Feingold should be applied to reverse convictions under Register if the direct appeal (not collateral attack, see Policano v. Herbert, 7 N.Y.3d 588, 603, 859 N.E.2d 484 (2006)) was pending at the time of the Feingold decision, it has elected to do so only if trial counsel preserved the objection to the Register standard at the time of trial, effectively anticipating the

change announced in Feingold. See People v. Jean-Baptiste, 11 N.Y.3d 539, 544, 872 N.Y.S.2d 701 (2008). There is no constitutional infirmity with this limited retroactive application of Feingold because retroactivity, even on direct appeal, is not constitutionally required, see Wainwright v. Stone, 414 U.S. 21, 23-24, 94 S. Ct. 190 (1973), unless the prior interpretation of the law was itself unconstitutional, see Fiore v. White, 531 U.S. 225, 228, 121 S. Ct. 712 (2001), which is not the case with the prior Register standard. See Mannix v. Phillips, 619 F.3d 187, 199-200 (2d Cir. 2010); Lampon v. LaValley, No. 10 Civ. 2591, 2011 U.S. Dist. LEXIS 15531, at *34 (E.D.N.Y. Feb. 15, 2011). And on collateral review, the Second Circuit has held that the federal constitution does not require the state court to automatically apply the new interpretation retroactively. Henry v. Ricks, 578 F.3d 134, 139-40 (2d Cir. 2009).

In the instant case, the Appellate Division held that petitioner had failed to preserve this claim, having raised only a general objection to the sufficiency of the evidence at trial. See People v. Folkes, 43 A.D.3d 956, 841 N.Y.S.2d 365 (2d Dep't 2007), leave to app. den., 9 N.Y.3d 1004, 850 N.Y.S.2d 392 (2010). It is well settled under New York law that a general objection to the sufficiency of the evidence does not preserve particular theories of inadequacy for appeal. See, e.g., People v. Carncross, 14 N.Y.3d 319, 324-25, 901 N.Y.S.2d 112, 114 (2010) ("[W]here a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be specifically directed at the alleged error") (quotations omitted); People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395, 399 (2008) (to properly preserve a challenge to the legal sufficiency of a conviction, "a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged" and "general motions simply do not create questions of law or fact for this Court's review."). It has also been decided by district courts in this Circuit that with regard to Feingold's overruling of

Register, this rule of New York procedure constitutes an "adequate and independent" state law bar to federal habeas corpus review under Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038 (1989), and its progeny. See, e.g., Sanchez, 2011 WL 924859, at *18 & fn. 30 (collecting cases).

Here, petitioner concedes that the Appellate Division appropriately invoked the procedural bar because his trial counsel made only a general motion to dismiss the depraved indifference count. He nevertheless contends that under the Harris line of cases, there is "cause" to overcome the valid state procedural bar because his trial counsel was ineffective for not objecting to the Register standard and anticipating Feingold.

This argument cannot succeed. One of the requirements to prevail on an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), is that counsel's performance must have been objectively unreasonable, that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The performance required under the Sixth Amendment requires trial counsel to be familiar with the law as it exists at the time he is trying the case, not to have a crystal ball and predict changes in the law well into the future.

Petitioner's trial was in March of 2000. Feingold did not overrule Register until 2006. A trial lawyer might well have displayed unusual foresight in anticipating Feingold years before it was decided – and, indeed, as Jean-Baptiste, 11 N.Y.3d 539 at 544, shows, at least one did – but unusual foresight is not the floor for constitutionally effective counsel, as that would be inconsistent with objective reasonableness. See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, "'viewed as of the time of counsel's conduct.'" Id. (quoting Strickland )); Haynes v. Ercole, No. 08-CV-3643, 2011 U.S. Dist. LEXIS 61293, at *13

(E.D.N.Y. June 8, 2011) (counsel not ineffective for not predicting Feingold); Lisojo v. Rock, 09 Civ. 7928, 2010 WL 1223086 at *32 (S.D.N.Y. Mar. 31, 2010) (On habeas review, defense counsel's performance is evaluated by the state of New York's depraved indifference murder case law at the time of trial.), report & rec. adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010); Fore v. Ercole, 594 F.Supp.2d 281, 305 (E.D.N.Y. 2009) ("[T]rial counsel cannot be held to be ineffective when he reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial."); Soto v. Conway, 565 F.Supp.2d 429, 436 (E.D.N.Y. 2008) ("[I]n reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness."). Under the law as it existed at the time of petitioner's trial, his trial counsel had no reason to believe that any standard other than Register would apply, and there is no question that the prosecutor's theory and the Court's instructions were proper under Register.

There is therefore no "cause" that would relieve petitioner from the adequate and independent state law ground for the Appellate Division's invocation of a procedural bar, and no basis for federal habeas corpus review.

## II. Fifth Amendment Invocation Issue

The detective testified that when he entered the interrogation room, petitioner "told me that he had nothing to say to me, that he had given me his statement previously, that he had a paid attorney, and that I had no case." Petitioner had not been given his Miranda rights when he made this statement, but on cross-examination, the detective made it clear that petitioner had made this statement before the detective had a chance to give him his Miranda rights: "I was

5

prepared to [give petitioner his Miranda rights], he didn't want me to. He stated off the top what we were going to do which was nothing. That was it."

Petitioner's statement to the detective had been the subject of a motion to suppress made just before the start of trial. In making that motion, his trial counsel did not argue that admission of the statement would violate petitioner's right against self-incrimination or any other constitutional right. His only argument was evidentiary: "there is absolutely no probative value to the statement and it only has a prejudicial effect. It adds nothing to the case, nothing to the People's proof."

On appeal, however, petitioner's appellate counsel argued that by introducing petitioner's statement, the prosecution was using petitioner's invocation of his right to remain silent against him in violation of the Fifth Amendment. The prosecutor compounded the error, according to his appellate counsel, because during closing argument, he mentioned that if the death of petitioner's girlfriend was really an accident, as petitioner contended, petitioner would have expressed some sorrow at the time he made his statement rather than stating that he had a paid lawyer and that the detective had no case against him. The Appellate Division held that the constitutional argument had not been asserted before or during trial and was thereby unpreserved. Folkes, 43 A.D.3d at 957.

In the instant habeas corpus petition, petitioner contends that his appellate counsel should have raised his trial counsel's ineffectiveness in not preserving the constitutional argument against the admission of petitioner's statement.

The contention that trial counsel was ineffective is unexhausted but deemed procedurally barred. It could have been raised on direct appeal, but was not, and there is no further state court proceeding in which it could be addressed. See Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir.

2009). As to appellate counsel's failure to assert trial counsel's ineffectiveness, that is unexhausted but not procedurally barred. This is because petitioner has never asked any state court to consider whether his appellate counsel was ineffective on this point. He did bring a *coram nobis* proceeding alleging that his appellate counsel was ineffective, but not for failing to raise this particular error of trial counsel. There is no limit on the timeliness or number of *coram nobis* proceedings that a petitioner can institute, and this claim is therefore not procedurally barred. See 4 Kamins, Mehler, Schwartz & Shapiro, New York Criminal Practice § 43.09[8] (Matthew Bender); see also People v. Bachert, 69 N.Y.2d 593, 599, 516 N.Y.S.2d 623 (1987). Thus, petitioner could, in theory, return to state court to exhaust this claim.

In this situation, the statute gives this Court the authority to either stay this action pending a disposition of the point in state court or to determine the merits *de novo*. 28 U.S.C. § 2254(b)(2). Because petitioner has not attempted to assert his appellate counsel's ineffectiveness in state court to date and the argument is straightforward, I will consider the merits of the claim.

Notwithstanding the prosecution's concession on direct appeal that the admission of the statement was error, I hold that appellate counsel was not objectively unreasonable, see Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052 (1984), in failing to argue trial counsel's ineffectiveness. This is because trial counsel was not ineffective in challenging admission of the statement solely on evidentiary grounds. And that is because there was no constitutional basis for excluding the statement.

Two principles converge to mandate this result. First, petitioner's statement was a classic "blurt," not a Miranda violation. The testimony of the detective was quite clear that he intended to, but never got the chance, to advise petitioner of his Miranda rights. The cases are uniform that the spontaneous declaration of a suspect in custody, made before the police have the

opportunity to advise him of his Miranda rights, does not result in a Miranda violation. "[W]here a defendant spontaneously and voluntarily makes self-incriminating statements without any prompting by law enforcement officers, his statements are admissible even if Miranda warnings had not yet been recited to him." U.S. v. Vasta, 649 F. Supp. 974, 988 (S.D.N.Y. 1986); see also Miranda, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); U.S. v. Mason, 550 F. Supp. 2d 309, 319 (E.D.N.Y. 2008) ("Here the [o]fficers neither asked any questions nor otherwise did anything . . . that would be the equivalent of interrogation. Accordingly, these statements are admissible."). U.S. v. Annucci, No. 06-CR-982(BSJ), 2007 WL 1310156, at *4 (S.D.N.Y. May 3, 2007) ("volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not barred by [the Court's] holding in Miranda") (citation and internal quotation marks omitted); U.S. v. Bravo, 403 F. Supp. 297, 304 (D.C.N.Y. 1975) (same). Thus, there was no Miranda violation for trial counsel to raise.

Second, with regard to the use of the statement at trial, the statement was not an invocation of Miranda rights; it was what the cases refer to as a "taunt," a verbally aggressive assertion meant to intimidate or derail the interrogator. There can no doubt at all about that with regard to the latter part of the statement, that petitioner "...had a paid attorney, and that I [the detective] had no case." The reference to a "paid" attorney is obviously meant to signal to the detective that he was in for a fight if he pursued the case (on the dubious presumption that a privately retained attorney will provide more effective representation than a publicly compensated one), and the reference to "hav[ing] no case" was similarly meant to give the detective a reason to give up. This is not an invocation of Miranda rights. It is an admission.

The part that preceded the "paid attorney" and "no case" portions of the statement – petitioner stating that "he had nothing to say to me, that he had given me his statement previously ..." – was just part of the taunt. It was the equivalent of saying "I said all I'm going to say and you've got nothing." The admission of the entire statement in its totality is far from the unambiguous invocation of Miranda rights that the law requires. See Berghuis v. Thompkins, 130 S. Ct. 2250, 2259-60 (2010) (the "requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity") (citation and internal quotation marks omitted); Burket v. Angelone, 208 F.3d 172, 200 (4th Cir. 2000) (holding that "I just don't think that I should say anything" was not a clear request to remain silent) (internal quotation marks omitted); U.S. v. Sherrod, 445 F.3d 980, 982 (7th Cir. 2006) (suspect's statement, "I'm not going to talk about nothin'," was ambiguous) (internal quotation marks omitted); Thomas v. Lamarque, 121 Fed. App'x. 220, 222 (9th Cir. 2005) ("we're done" in response to questioning "was not an unambiguous and unequivocal invocation of [petitioner's] right to terminate questioning"); Bradley v. Meachum, 918 F.2d 338, 342-43 (2d Cir. 1990) (the defendant's initial statement that he would not say whether or not he had been involved was "part of an ongoing stream of speech" that was neither "an invocation of the right to remain silent . . . no[r] the functional equivalent of silence").

Although petitioner protests the prosecutor's reference to his statement during closing argument, it is notable that the prosecutor only referenced the most clearly admissible portion of the statement – that petitioner had a "paid attorney" and that the detective had "no case." There was nothing for trial counsel to object to as to that. Petitioner's defense was that his girlfriend had stabbed herself to death with the knife accidentally, and yet when he was about to be

questioned, instead of mourning over his loss, petitioner was more interested in taunting the police. That is the only point the prosecutor made, and it was a proper use of his statement.

Petitioner's trial counsel therefore made no error in not objecting on constitutional grounds, and petitioner's appellate counsel was not ineffective for failing to assert the contrary.

### III. Girlfriend's Statements

The superintendent of the building in which petitioner and his girlfriend lived and a window repairman saw petitioner's girlfriend in the hallway, holding her chest, which was bleeding. She said, "help me. I've been stabbed." The Superintendent called 911 as petitioner then came out into the hall and struggled with his girlfriend to take her outside of the building, where she collapsed onto the sidewalk. As she lay dying, the police arrived to find petitioner straddling over her. Petitioner told police she had fallen on the knife. He then said twice to his girlfriend, "Tell them it was an accident, right?" She shook her head up and down, which the police officer interpreted to be an affirmative response. The police asked what happened, and ultimately the girlfriend said she fell on the knife. She was conscious, but groggy.

In the ambulance with the police, the girlfriend was crying, yelling, and screaming. The officer continued to press her as to what happened. She said her apartment had been broken into recently and so she kept a knife by her bed; she said that when seeking to return the knife to the kitchen, she had tripped and fell on it. The officer in the ambulance asked her if petitioner had stabbed her, and she denied it. The officer asked where the boyfriend was at the time of the stabbing, and she said he had been on another floor, away from her.

There was no objection to this testimony at trial. That was obviously because on its face, it supported the defense; indeed, the entire defense was premised on it. The prosecution had

10

offered it only to contrast it with petitioner's contradictory statements at the scene; to show petitioner's effort to induce her through leading questions to exculpate him; and as the predicate for its coroner's opinion that the stabbing could not have been accidental (together with much other circumstantial evidence supporting guilt). It was the prosecution's theory that these exculpatory statements were false, and that petitioner had induced his girlfriend to exonerate him as she lay dying. No doubt for the same reason that petitioner's trial counsel did not object to this theory, appellate counsel did not challenge the admission of the statements on appeal.

Nevertheless, petitioner alleged in his *coram nobis* petition that appellate counsel should have argued that trial counsel was ineffective for not objecting to this testimony on hearsay and confrontation clause grounds. The Appellate Division summarily rejected the argument on the merits. People v. Folkes, 69 A.D.3d 957, 892 N.Y.S.2d 788 (2d Dep't 2010). Therefore, this Court's standard of review is whether the Appellate Division's decision was contrary to, or an unreasonable application of, Supreme Court decisional law. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2010).

Petitioner's argument is frivolous, and the Appellate Division's decision is certainly not contrary to nor an unreasonable application of Supreme Court authority. Since petitioner has identified no other defense besides the one trial counsel used – that his girlfriend fell on the knife – it would have been gross ineffective assistance if trial counsel had objected to this testimony. Under Strickland, there was thus neither objective unreasonableness, nor prejudice to petitioner. Moreover, since the prosecution was not introducing the statements for their truth – but rather for their falsity, to prove petitioner's culpable state of mind – they were not hearsay. And because the statements on their face were exculpatory and were therefore clearly not introduced for the truth of the matter asserted, there was no confrontation clause violation, whether the statements

11

are viewed as testimonial or not. See Crawford v. Washington, 124 S. Ct. 1354, 1369 n.9 (2004); United States v. Rommy, 506 F.3d 108, 139 (2d Cir. 2007).

## CONCLUSION

The petition is denied and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability shall not issue. See 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
June 30, 2011